**UNITED STATES v. JOHNSON.**

**SAME v. SOMMERS et al.**

**Nos. 7500, 7501.**

Circuit Court of Appeals, Seventh Circuit.

May 6, 1944.

William J. Dempsey, of Washington, D. C., and Harold R. Schradzke, of Chicago, Ill., for appellants.

J. Albert Woll, Earle C. Hurley, U. S. Atty., and Nathan M. Cohen, Asst. U. S. Atty., all of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

On October 12, 1940, in the District Court for the Northern District of Illinois, Eastern Division, a jury returned a verdict of guilty against William R. Johnson and others on an indictment which charged Johnson with the evasion of income taxes for the years 1936, 1937, 1938, and 1939, and the other defendants as aiders and abettors of Johnson, and a conspiracy by all to commit the substantive offense. Motions for a new trial and in arrest of judgment were overruled, and October 23, 1940, judgment was entered upon the verdict. On September 15, 1941, we reversed the judgment. 7 Cir., 123 F.2d 111. On certiorari to the Supreme Court, that court reversed this court. 319 U.S. 503, 63 S. Ct. 1233, 87 L.Ed. 1546. Before the mandate of the Supreme Court issued, the defendants filed in that court a motion for a stay of mandate until they could take such steps in this court pursuant to Rule 2(3) of the Criminal Appeals Rules, 18 U.S.C.A. following section 688,[1] as were necessary to have the case remanded to the District Court for the purpose of permitting the defendants to file a motion for a new trial upon the grounds of newly discovered evidence. Mr. Justice Frankfurter, to whom this motion was presented, refused to stay the mandate but stated at the time:

"This denial is without prejudice, however, to the consideration and disposition by the United States Circuit Court of Appeals for the Seventh Circuit of any motion filed under Rule 2(3) of the Criminal Appeals Rules and any motion collateral thereto."

The mandate of the Supreme Court issued on July 6, 1943, and on the same date, the defendants filed in this court a motion to stay judgment pending the hearing and determination of a motion for the remand of the case under Rule 2(3). The motion to stay judgment was granted. On October 15, 1943, we entered the following order:

"The court having heard argument of counsel, and being advised in the premises, does hereby order these causes remanded to said District Court to consider and dispose of any motion filed, or which may be filed, under Rule 2(3) of the Criminal Appeals Rules and any motion collateral thereto, and said District Court is hereby authorized to assume jurisdiction of said causes for such purposes."

When we sent this case to the District Court, we did so without passing upon the merits of the motion but submitted the entire matter for consideration and disposition by the District Court.

On October 19, 1943, the defendants were granted leave by the District Court to file their motion for a new trial on the ground of newly discovered evidence, together with supporting affidavits and papers; and the Government was given time to respond. The motion was set for hearing and was heard on November 15, 1943, by the Honorable John P. Barnes, who had presided at the trial of the defendants.

On the original trial, the Government sought to show Johnson's guilt by proving that he had made a statement as to his

[1] "Except in capital cases a motion for a new trial solely upon the ground of newly-discovered evidence may be made within sixty (60) days after final judgment, without regard to the expiration of the term at which judgment was rendered, unless an appeal has been taken and in that event the trial court may entertain the motion only on remand of the case by the appellate court for that purpose, and such remand may be made at any time before final judgment. In capital cases the motion may be made at any time before execution of the judgment".

assets. The Government then produced the income tax returns of Johnson to show the income he had reported for the years in question. This cash on hand plus the income reported by him for the years in question were claimed by the Government to be the funds available from which he could make expenditures. The Government introduced evidence to show that he had made expenditures over the four years in excess of these funds and claimed that this excess was unreported income. The Government offered the evidence of witness William Goldstein to prove that Johnson had furnished the funds and had requested Goldstein to purchase certain pieces of real estate and to deposit in escrow certain other funds which Johnson furnished to him. Goldstein's testimony showed that the titles to the properties had been taken in the name of a third person, who afterwards conveyed the titles to Johnson, except for one piece, the title to which was still being held in trust for Johnson. Goldstein's testimony also showed that the escrow funds were Johnson's. At the trial, Johnson denied that he had requested Goldstein to purchase any of the properties or that he had given him any money to do so, but he did admit that he had received title to six of the properties, and a quit-claim deed to one half of a seventh piece, as Goldstein had testified.

The motion for a new trial proceeded upon the grounds that the material witness for the Government, Goldstein, had testified falsely concerning the purchases of the properties and the handling of the two deposits in escrow. The ownership of these properties was gone into at the trial, and numerous witnesses were examined by the Government as to Johnson's acts of ownership and dominion over the properties in question. The defendants themselves called sixteen witnesses to testify as to acts of ownership and dominion over the properties performed by persons other than Johnson.

The so-called newly discovered evidence was intended to show further acts of ownership and dominion over these properties by persons other than Johnson, and included statements purported to have been made by Goldstein not under oath, which were in conflict with his testimony at the trial. Goldstein made affidavits denying that he had made these contradictory statements, and there were affidavits supporting him as to some of the incidents.

The District Court, after considering the written motion of the defendants and all of the affidavits and other material filed by them in support of their motion, the answer of the Government and the affidavits filed in support thereof, the briefs of both parties, the records of the District Court, and the printed transcript and bill of exceptions filed in this Court on the former appeal, found and concluded:

"1. That none of these items of allegedly newly discovered evidence constitute 'newly discovered evidence warranting a new trial';

"2. That all but a few items are merely cumulative * * *; and that the defendants had not been diligent * * *;

"3. That all items which are not merely cumulative are merely impeaching * * *;

"4. That Goldstein has not recanted, and did not perjure himself on the trial; that Goldstein's testimony concerning the source of the currency utilized in the purchases and proposed purchases of the properties mentioned by him is corroborated by facts and circumstances in evidence at the trial;

"5. That the allegedly newly discovered evidence is not such or of such a nature as on a new trial would probably produce an acquittal;

" * * * "

The motion for a new trial was overruled and from that order, the defendants gave notice of appeal.

■ Both the Government and the defendant concede that the order is a final order from which an appeal will lie. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; Fewox v. United States, 5 Cir., 77 F.2d 699, 700; 28 U.S. C.A. § 225(a). If this order were not appealable, it would be the final chapter in this case. There is no judgment pending in this court or elsewhere from which an appeal might be taken or on which the action on this motion for a new trial might be considered. While appeals are granted as a matter of grace and not of right (and there was a time when appeals in criminal cases were not granted at all, United States v. Sanges, 144 U.S. 310, 319, 12 S.Ct. 609, 36 L.Ed. 445) the modern tendency is to be more liberal in broadening the scope of appeals. It is just as important to the Government as it is to the defendants that orders of this kind be recognized as final and appealable.

██ The Government contends that although the order is appealable, it is not reviewable by us. Certainly we do not have the right to consider the record for the purpose of arriving at an independent finding and judgment of our own which we may substitute for that of the trial judge. We do not sit to try the case de novo. We are to review, as always, for errors of law, which review includes a review of the trial court's action for the purpose of determining whether or not it abused its discretion in reaching the conclusion it did. Pemberton v. United States, 10 Cir., 76 F.2d 596. In determining whether or not the trial court abused its discretion, we consider not only the things which it considered as exhibited by the record in this court, but we consider also whether it improperly excluded from its consideration anything that should have been considered. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917. After such a review and consideration, we do not have the right, where there are no improper exclusions, to substitute our findings or judgment for that of the trial court. We determine by the record only whether the trial judge might reasonably have reached the conclusion which he did.

The defendants in their brief express substantially the same view in the following language:

"If the trial court's action violated controlling legal principles, his action is reversed as an abuse of discretion. His action is also to be reversed as an abuse of discretion if, although not violating applicable legal precedent, it is deemed by the appellate court to be arbitrary or unreasonable. The appellate court, in deciding whether the denial constituted unreasonable or arbitrary action will do so upon the appeal record."

██ The trial court, with painstaking effort and meticulous care, considered the record and prepared and filed in support of its order a written opinion covering nearly fifty-five pages in the record. It would serve no useful purpose for us to set forth a detailed analysis of each and every item of the record considered by the court, and to do so would extend the length of this opinion unnecessarily and unjustifiably. Suffice it to say that we have carefully considered the record before us and the action of the trial court, and we are of the opinion that it did not abuse its discretion in overruling the motion for a new trial.

The defendants contend that in determining the sufficiency of the motion for a new trial on the ground of newly discovered evidence, the District Court should have considered only:

1. Whether there was newly discovered evidence diligently found and produced.

2. Whether facts were alleged which, as a matter of law, required the conclusion that the defendants did not have a fair trial.

3. Whether the evidence on the motion supported this allegation,

citing Larrison v. United States, 7 Cir., 24 F.2d 82; Martin v. United States, 5 Cir., 17 F.2d 973; Pettine v. Territory of New Mexico, 8 Cir., 201 F. 489. In these cases, the court was discussing the rule where there had been a recantation or where it had been proved that false testimony had been given on the former trial. The rule was only discussed and not applied in Larrison v. United States and Martin v. United States, while in Pettine v. Territory of New Mexico, it was discussed and applied. In such cases, the materiality of the testimony is considered in its relation to the past trial to determine whether or not, as we said in the Larrison case, 24 F.2d at page 87, "(b) That without it the jury *might* have reached a different conclusion." If the former testimony is found to be false and is of such materiality that without it the jury might have reached a different conclusion, the rule of the above cases is applicable.

That is not the case we have before us. In this case, the District Court found that Goldstein had not testified falsely or recanted. The court had before it for consideration not only the motion for a new trial and the supporting affidavits but, as the trial court, it had also the record made upon the trial and the demeanor of Goldstein and others upon the stand. The trial court also had for consideration Goldstein's affidavits in denial of the so-called newly discovered evidence and the affidavits of others supporting Goldstein. Several of those who made affidavits for the defendants in support of their motion were witnesses at the trial. So it was not merely a printed record that the District Court had before it.

We cannot say, in the light of the whole record before the District Court, that the

so-called newly discovered evidence inevitably leads to the conclusion that Goldstein had testified falsely. We cannot say, as a matter of law, that the District Court erred in its finding. Since the District Court found that there was no false testimony or recantation by Goldstein, the rule discussed in the Larrison case is not applicable.

Having decided that there was no recantation or false swearing by Goldstein, the District Court then considered the case as any other motion for a new trial on newly discovered evidence would be considered. On such consideration, the court found that the rule for such motions "has never been better nor more succinctly stated than" in Berry v. State of Georgia, 10 Ga. 511, which he quoted as follows:

"Upon the following points there seems to be a pretty general concurrence of authority, viz: that it is incumbent on a party who asks for a new trial, on the ground of newly discovered evidence, to satisfy the Court, 1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to the want of due diligence that it did not come sooner. 3d. That it is so material that it would probably produce a different verdict, if the new trial were granted. 4th. That it is not cumulative only—viz.:—speaking to facts, in relation to which there was evidence on the trial. 5th. That the affidavit of the witness himself should be produced, or its absence accounted for. And 6th, a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness."

This is the general rule applicable where there has been no showing of recantation or false swearing and the effect of the newly discovered evidence is considered in its relation to a possible new trial. This rule has been · followed in the Federal cases and is of almost universal application among the States. Johnson v. United States, 10 Cir., 32 F.2d 127, 130; Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 119 F.2d 497, 500; Weiss v. United States, 5 Cir., 122 F.2d 675, 691; Evans v. United States, 10 Cir., 122 F.2d 461, 469; Wagner v. United States, 9 Cir., 118 F.2d 801, 802; Prisament v. United States, 5 Cir., 96 F. 2d 865, 866; 23 Corpus Juris Secundum, Criminal Law, § 1461; 39 American Jurisprudence, § 165. In the application of this rule, the District Court considered whether the so-called newly discovered evidence was cumulative, whether it was diligently obtained and presented, and whether some of it was merely impeaching. The court found that much of the evidence was subject to one or the other of these infirmities and that on the whole it did not meet the standards of newly discovered evidence warranting a new trial. In this we cannot say, as a matter of law, that the trial court erred.

We think Judge Barnes did not reach his conclusions arbitrarily, capriciously, or in the misapplication of any rule of law. Hence, he did not abuse his discretion. The action of the trial court in overruling the motion for a new trial is

Affirmed.