John VUCKSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20013.

United States Court of Appeals Ninth Circuit.

Jan. 4, 1966.

Rehearing Denied Feb. 11, 1966.

William A. Dougherty, Santa Ana, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Warren

P. Reese, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

BARNES, Circuit Judge:

Appellant appeals from a conviction by a jury of perjury (18 U.S.C. §§ 1621 and 3231), committed before a grand jury. We have jurisdiction of the appeal. 28 U.S.C. §§ 1291 and 1294.

■ Whoever, under oath that he will testify truly, *wilfully* and contrary to the oath *testifies falsely* as to a *material matter*, not believing it to be true, is guilty of perjury. (13 U.S.C. § 1621.) Perjury is not proved as are most crimes. The crime of perjury, from the time of Blackstone, has been declared not capable of proof on the testimony of but one witness, "because there is then but one oath against another." United States v. Wood, 39 U.S. (14 Pet.) 430, 437, 10 L.Ed. 527 (1840), citing Hawkins' Pleas of the Crown, Vol. 2, ch. 46, p. 591.

But is one living witness necessary? The Wood case, supra, holds not; that a defendant's entries supported by his own letters, showing the cost of goods in his books of account, contrary to his sworn statement as to cost at a custom house, constituted perjury if the jury believes this written evidence and establishes a false and corrupt oath.

■ In other words, "direct and positive evidence" can be supplied by written evidence; and there need not be "live" oral testimony. This court discussed the United States v. Wood, supra, holding in the Radomsky case, and approved its holding. The crime of perjury must be proved by "direct and positive evidence of the falsity of the statement under oath, and * * * circumstantial evidence of such falsity, no matter how persuasive * * * [is] insufficient." Radomsky v. United States, 180 F.2d 781 at 782–783 (9th Cir. 1950).

■■ Circumstantial evidence establishes the fact to be proved through inference based on human experience. Direct evidence establishes the fact without the necessity for such inference. (Idem.) "[C]ircumstantial evidence is not considered inferior to direct evidence in any respect. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150." Hiram v. United States, 354 F.2d 4 (9th Cir., December 10, 1965).

■ The fact the evidence is a writing emanating from the defendant is in itself insufficient to convict, unless it is direct and positive proof. Allen v. United States, 194 F. 664, 667–668, 39 L.R.A.,N.S., 385 (4th Cir. 1912). Yet direct and positive evidence by testimony of the falsity of a statement of a material matter, wilfully made under oath, *supported by valid circumstantial evidence,* is sufficient to convict. "Valid" circumstantial evidence is that which produces conviction in the jury's mind. "Once the required quantum of proof is met, the jury is as much the trier of fact in a perjury case as in any other case, and its decision on questions of credibility is final." Sigman v. United States, 320 F.2d 176, 178 (9th Cir. 1963).

Having briefly reviewed the law as to proof of perjury, we turn to appellant's third point of six raised on appeal—the insufficiency of the evidence.

Appellant was charged with four alleged false statements before the grand jury. Two (relating to knowing Larry Schmidt or operating "a split" with Larry Schmidt) we disregard.[1] Proof of any one act of perjury is sufficient to convict. The remaining two perjurious statements are:

"Q. During this six years [you were at Midstate Bowling Alley] up until the present time have you at any time placed any bets with bookmakers on horse races?

"A. No. [R.T. 109]

\* \* \* \* \* \*

---

1. Appellant was asked if he knew "Larry Schmidt," but was *not* asked if he knew any "Larry," who was bookmaking.

"Q. You have not placed bets with bookmakers?

"A. No.

"Q. It is fairly simple to place bets with bookmakers in Fresno, isn't it?

"A. Not that I know. I don't know really, myself." (R.T. 113)

Four witnesses—Sophie Harris (Tr. pp. 116–19; 139–40), Henri Corbat (Tr. 68–9), Merle Ingram (Tr. 86), and Mrs. Foriani (Tr. 80–1) each testified they bet with a bookmaker *in partnership with the defendant* on many occasions. Most bets were small, some over $200, with a bookmaker called "Larry."

Larry Schmidt testified he was a bookmaker in Fresno at the time in question, but that he accepted no bets from appellant Vuckson.

He was then impeached by use of his written statement reading as follows:

"May 26, 1964

"On May 26, 1964 Mr. Lawrence George Schmidt at the Witness Room, Federal Court House, Fresno, California, at 10:32 A.M. told Special Agents K. V. Domogalla and L. H. Miller and Attorney Jener W. Nielson that John Vuckson, former bartender at the Midstate Bowl, Fresno, California, gave him (Schmidt) several small horse race wagers on several occasions during the year 1963 in Fresno, California.

Lawrence George Schmidt"
(Pltf's Ex. 3)

Mr. Schmidt explained the discrepancy by stating that appellant "actually * * had bet with me through somebody else, although I knew it was his bet * * *. I had written down that he had bet with me, but actually another person had given me the wager." (Tr. 103)

Thus, at best, there was a conflict in the evidence as to whether appellant did know "Larry" as "Larry Schmidt." He did know a "Larry" who was a bookmaker. According to two witnesses, appellant had personally placed bets with

bookmakers.[2] According to four witnesses appellant had placed bets "in partnership" with others. He had personally and alone collected bets which the partnership had won. The question was for the jury. There was direct and positive evidence of perjury, if the jury believed witnesses other than appellant and Larry Schmidt.

 Looking upon the evidence introduced in the light most favorable to the government, as we must on this appeal, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find there was sufficient "direct and positive evidence" to support the jury's verdict.

Appellant's second point is that a motion for acquittal should have been granted because there was no proof the appellant's testimony was given under oath.

 The grand jury testimony offered by the government went into evidence by stipulation, without objection (Tr. 45–46). Appellant now urges that the stipulation covered the testimony only and not the recital appearing in the document that John Vuckson was "first duly sworn" before testifying. The difficulty with this position is that (a) Exhibit 1 was introduced in its entirety, and it discloses on its face on the first page that John Vuckson *was* first duly sworn before being questioned; (b) it having been stipulated Exhibit 1 was testimony given before a grand jury there is a strong presumption that all procedures in connection therewith were regular, i. e., that testimony before the grand jury was given under oath. United States v. Nunan, 236 F.2d 576, 594 (2d Cir. 1956), cert. den. 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957); Beatrice Foods Co. v. United States, 312 F.2d 29 (8th Cir. 1963); (c) no motion for judgment of acquittal was made upon the ground there was no proof the testimony taken before the grand jury was under oath. Thus appellant waived his right to question the sufficiency of the evidence. Rule

---

2. Harris: Tr. pp. 116–19; 138–39; Corbat: Tr. pp. 68, *l.* 22 to 69, *l.* 9.

51, Fed.R.Crim.P.; Lupo v. United States, 322 F.2d 569, 570 (9th Cir. 1963). Further, and finally, (d) appellant was asked on cross-examination whether or not he had been placed under oath before testifying before the grand jury, and he replied that he had been (Tr. p. 250, lines 6–12). We find no error.

■ Appellant's first point on appeal is that no offense was charged against him. The offense of perjury was charged in the language of the statute. That is sufficient.

■ Appellant's fourth ground of appeal was that appellant was deprived of a fair trial by the prosecutor's "continued misstatements of the law." Suffice it to say not one of the alleged misstatements of law (or fact) caused a single objection to be raised by appellant's very competent trial counsel. We can find no error.

■ Appellant's fifth alleged error is that the court erred in not determining the extent of the jury's knowledge of the case gleaned from the press. The trial court, on its own motion, advised the jury to disregard anything they had read of the case, although he had not himself read it. No objection was made by appellant's counsel to the instruction given, nor was any further instruction suggested or requested. No offer of proof as to what facts were printed in the paper or what any juror had read, or might have read, was made. We find no possible error.

Finally, appellant urges as his sixth ground of error, the alleged failure of the trial court to define the elements of perjury.

We find the court properly and adequately instructed the jury. This in-

cluded, beside general instructions, (1) an instruction on the meaning of "wilfully"; (2) a reading of the indictment; (3) a reading of the statute (18 U.S.C. § 1621); (4) an instruction that the alleged false testimony was, as a matter of law, material to the grand jury's investigation; (5) an instruction that the falsity of the alleged perjury must be proved by the testimony of two witnesses or by the testimony of one witness and corroborating circumstances.

■ Appellant now complains of the failure of the trial court to give what we presume was Judge Mathes' instruction No. 42.03—defining the elements of perjury, referred to in the record as instruction No. 3.[3] Not only did appellant's counsel not ask for instruction No. 3 when the court stated he proposed "to take out No. 3 and just read No. 2 and No. 4," but counsel for appellant stated: "I think that would be better, your Honor." (Tr. 282) The court advised appellant's counsel it would "leave out No. 3 and modify No. 4 * * * to please" appellant's counsel, although the court felt it would be better to give it (instruction No. 3). (Tr. 283) But it was left that appellant's counsel could advise the court "in the morning" if he wanted No. 3. In the morning, he did not so advise the court, either in the morning before argument, or after argument, or before instructions in the afternoon (Tr. 285, 341), nor after the instructions were given, but before the jury retired. (Tr. 354) Having been so invited, the error can hardly now be urged, for the first time on appeal, under well understood principles. Rule 30, Fed.R.Crim.P. Sherwin v. United States, 320 F.2d 137, 147 (9th Cir. 1963).

Finding no error, we affirm.

---

3. Government counsel by request for supplemental designation of record requested "all jury instructions proposed by the government, filed on December 3, 1964." All instructions *given* were contained in the Supplemental Transcript, but those refused were not. Whether on file in the district court or not, we do not know. For this reason, we are required to rely on inference and presumptions. Appellant, of course, in raising his sixth alleged error, has failed to comply with the third sentence of Rule 18, subd. 2 (d) of this court.