UNITED STATES of America, Plaintiff-Appellee,

v.

M. Prial CURRAN, Defendant-Appellant.

No. 17002.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1972.

Decided July 20, 1972.

---

Norman J. Barry, Edward I. Roths-child, Joseph V. Karaganis, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gordon Nash, Jr., John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

The record on this appeal is abbreviated. However, the issue is a narrow one and there is adequate documentation before us upon which to lodge our decision.

The factual background of this litigation is amply set forth in United States v. Kahn, 381 F.2d 824 (7th Cir. 1967), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661, and need not be repeated here.

Kahn, who was the client of Curran, the appellant here, and Sachs, attorneys, upon reaching the end of the appellate road, furnished an affidavit to the lawyers which stated in part the following:

> "In the trial of the case, I exercised my constitutional privilege not to testify. Had I elected to testify, there is much evidence I could have given which would have negated the guilt of my co-defendants, Arthur B. Sachs and M. Prial Curran. I make this affidavit, at their request and for such use as they or their attorneys may make of it, for the purpose of indicating the nature of the testimony which I could have given and which I would now give if I should be called upon as a witness in an appropriate proceeding. Neither Mr. Sachs nor Mr. Curran, nor any other person has given me anything of value, promise or other consideration for making this affidavit."

The affidavit was promptly made the subject, as newly discovered evidence, of a motion for a new trial. It is not clear from the record whether Curran knew, prior to the receipt of the affidavit, the matters set forth in the affidavit or whether, knowing at least some of the matters, he was unable to bring them out via Kahn at the trial because of Kahn's disinclination to take the witness stand. While conceivably this might reflect upon whether the assertions in the affidavit were "newly discovered" as opposed to being known but not available [1] and might further have a place in the overall diligence picture, because of the

---

1. "Inasmuch as Armstrong's testimony was unavailable at Maddox's trial because of Armstrong's Fifth Amendment privilege, we are hesitant to say that Armstrong's testimony was not new evidence." United States v. Maddox, 444 F.2d 148, 152 (2d Cir. 1971).

result we reach, we do not need to pursue these particular aspects of the case.

The district court, being the judge who had tried the case, heard oral argument on the motion for new trial and overruled it. Both Curran and Sachs initiated appeals from the denial. Bail pending appeal having been denied, Curran has completed the part of the sentence he was required to serve but is now seeking to clear his name of the charges on which he was convicted. Sachs failed to present himself for imprisonment and was subsequently found dead, apparently a suicide.

The mention of Sachs is occasioned because of the suggestion during oral argument that the principal attorney for Kahn was Sachs, who headed Arthur Sachs and Associates, and that Curran was in effect only a salaried minion. We can give no weight to this approach as the affidavit makes no differentiation between the two lawyers and insofar as it is exculpatory of them, they are treated equally.

■ At the outset, we note the apt words of Professor Wright, "[a]lthough defendants are tireless in seeking new trials on the ground of newly discovered evidence, motions on this ground are not favored by the courts and are viewed with great caution." 2 C. Wright, Federal Practice and Procedure: Criminal § 557, at 515 (1969). This, of course, as the Wright text indicates, does not mean that the motions will not be granted in the proper case, and whether this is a proper case must be our inquiry here. The thrust of our inquiry is whether the broad discretion, which the trial judge wisely has in this situation, has been abused. United States v. Maddox, *supra*.

The district court made no findings in this case. The judge at the conclusion of the argument did observe, *inter alia*, that there must in the course of events be an end to litigation of this type and that there had been a long road in this case. The second part of the observation is undoubtedly true. The trial commenced on December 7, 1965, and was concluded on January 6, 1966, occupying in the interim some 19 days of court time. Reference appears in the record to 18 volumes of transcript and numerous exhibits. None of this material was brought to us in the present appeal. In the original appeal, a unanimous panel of this court speaking through then Chief Judge Hastings in a carefully considered opinion concluded in affirming the convictions, that all of the defendants had been afforded a fair trial. United States v. Kahn, *supra*, 381 F.2d at 842. Certiorari was denied.

■ We do not deem, however, that the length of the road is per se a basis for finding that the terminal has been reached. As Judge Grant in speaking for this court stated in an analogous situation, "[The proceedings there involved] however desirable from the point of view of efficient and expeditious criminal adjudication, may not be had at the expense of a defendant's right to a fundamentally fair trial." United States v. Echeles, 352 F.2d 892, 896 (7th Cir. 1965).

The district court here, however, was of the opinion, after seeing the affidavit and hearing argument, that a fair trial had been had. Although we have no findings as such regarding the scope or applicability of the affidavit, we may determine from the record whether the trial judge might reasonably have reached the conclusion he did in overruling the motion for a new trial. We do so not on a de novo basis but only to determine whether, in reaching the conclusion the district court did, discretion was abused. United States v. Johnson, 142 F.2d 588, 591 (7th Cir. 1944), appeal dismissed, 323 U.S. 806, 65 S.Ct. 264, 89 L.Ed. 643.

We therefore turn to the affidavit, for on this document Curran's appeal must prevail or fail. We are not at this juncture impressed by the fact that if Kahn had testified the jury might have had a more complete and well-rounded picture of Curran's involvement or lack thereof

than was put forward in the affidavit. Direct or cross-examination might have adduced additional exculpatory facts not thought of at the time of the preparation of the affidavit. To consider this, however, would be to launch ourselves on the perilous path of speculation as it could be as easily thought that cross-examination of Kahn might have incriminated Curran. We decline, therefore, to go beyond the borders of the affidavit.

That document, at best, sheds a crepuscular light on Curran's guilt as charged in the counts of the indictment on which he was found guilty. We are not persuaded, indeed not aided, by the conclusionary nature of some of the assertions.

Looking at specifics, we turn to the substantive counts of the indictment involved in this appeal, Counts III and XVI.[2]

Count III generally charges Curran as an aider and abettor in the misapplication of funds of the Chatham Bank of Chicago by fraudulently causing a check of the bank to be disbursed to Midwest Bank and Trust Company, the amount of the check purportedly being the proceeds of a loan made to Sandy Building Corporation on property with knowledge by the defendant that the property failed to provide sufficient security for the loan.

The affidavit on this particular subject states that the loan had been fully negotiated and approved by the bank before Sachs and Curran were in any way involved, that they made no representations as to the value of the real estate and that the matter of ordering the appraisal was handled by bank personnel.

This does not in our opinion negate nor disprove the charge of misapplication with knowledge as contained in the indictment. In point of fact, the affidavit does not necessarily state that Curran did not have knowledge but merely that he was not involved in securing the loan. The charge was misapplication of the proceeds, not fraudulent procure-

ment. In any event, it seems clear that there is no negation of knowledge at the crucial time of misapplication.

Curran in his brief argues that he "could not have known of its insufficiency because he was not involved in obtaining the appraisal of the property and had nothing to do with the loan until after it was negotiated and approved." As has been pointed out, the misapplication came timewise after the approval of the loan.

A further difficulty for Curran is inherent in the present situation dealing with knowledge. Kahn could scarcely, over objection, testify to what Curran did or did not know. He could only testify as to objective facts from which knowledge or lack of knowledge might be inferred.

With regard to Count XVI, again there is a lack of direct confrontation with the charges contained in the indictment. In this count, Curran was charged as a principal. The affidavit states that Sachs and Curran had nothing to do with the procurement of the loan. Aside from the conclusionary nature of this statement, once more the principal thrust of the count is the misapplication of funds with specified knowledge, which the affidavit does not negate. It is true that this count refers to the defendants' fraudulently causing the loan to be made but this making refers to it being made without the knowledge or approval of the board of directors of Equitable Savings and Loan Association, of which board Curran was a member.

The affidavit when it becomes specific on this loan refers to a loan committee and not the board of directors. The affidavit further does admit that Kahn's meeting with the appraiser was in Sachs' office but asserts that neither Curran nor Sachs was present at the meeting. Kahn in his affidavit does not, as he could not, state that Curran had no knowledge that the real estate

---

2. The full text of these two counts appears in the appendix of this court's opinion in United States v. Kahn, *supra*, 381 F.2d at 845–846 and 848.

value was substantially less than the amount of the mortgage loan. The same is true of his knowledge or lack of knowledge that the appraisal was based on a hypothetical and future plan for real estate development.

In sum, as to both counts there is a skirting of the real issues presented. Some of the references in the affidavit insofar as they are specific as to persons or events involved would require our combing the 18 volumes of transcript to give them meaningful significance. The transcript was not brought before this court on the present appeal. However, the district court in ruling on the motion for a new trial did have knowledge of the evidentiary matters.

The third count on which Curran was found guilty was the conspiracy count, Count I. Curran proceeded on this appeal, insofar as the conspiracy count was concerned, on the basis that the probability of acquittal in Counts III and XVI would certainly affect a verdict on Count I as well. This may be, but conversely we do not find in the record presented to us any independent support vis-à-vis Count I for the motion for a new trial.

The law on the granting of a motion for new trial on the basis of newly discovered evidence is well established not only in this circuit but elsewhere. In United States v. Johnson, *supra,* 142 F. 2d at 592, then Circuit Judge Minton stated:

"Having decided that there was no recantation or false swearing by Goldstein, the District Court then considered the case as any other motion for a new trial on newly discovered evidence would be considered. On such consideration, the court found that the rule for such motions 'has never been better nor more succinctly stated than' in Berry v. State of Georgia, 10 Ga. 511, which he quoted as follows:

'Upon the following points there seems to be a pretty general concurrence of authority, viz: that it is incumbent on a party who asks for a new trial, on the ground of newly discovered evidence, to satisfy the Court, 1st. That the evidence has come to his knowledge since the trial. 2d. That it was not owing to the want of due diligence that it did not come sooner. 3d. That it is so material that it would probably produce a different verdict, if the new trial were granted. 4th. That it is not cumulative only—viz.:—speaking to facts, in relation to which there was evidence on the trial. 5th. That the affidavit of the witness himself should be produced, or its absence accounted for. And 6th, a new trial will not be granted, if the only object of the testimony is to impeach the character or credit of a witness.'

"This is the general rule applicable where there has been no showing of recantation or false swearing and the effect of the newly discovered evidence is considered in its relation to a possible new trial. This rule has been followed in the Federal cases and is of almost universal application among the States."

*See also* United States v. Marachowsky, 213 F.2d 235, 238 (7th Cir. 1954), cert. denied, 348 U.S. 826, 75 S.Ct. 43, 99 L.Ed. 651.

■ We are here particularly concerned with that part of the *Johnson* (or *Berry*) test that the newly discovered evidence is so material that it *probably* would produce a different result if a new trial were granted. Curran urges that since the Government opposed the motion for separate trials, thereby making it impossible for Curran either to call on Kahn as a witness or to comment on his refusal to testify, there is a degree of governmental culpability which would dilute the stringent probability standard. It is suggested that even if this did not go to the extent involved in Larrison v. United States, 24 F.2d 82 (7th Cir. 1928), where in the case of a recanting witness the standard is that without the false testimony the jury *might* have reached a different result,

nevertheless there should be here some in-between rule applicable.

We do not find any basis in the facts of the present case for any deviation from the probability standard.

Judge Major recently for this court in United States v. Spencer, 415 F.2d 1301, 1304 (7th Cir. 1969), reaffirmed the viability of the probability standard as one of the controlling criteria.

*Spencer* also answers that part of Curran's argument that Kahn's direct testimony should overcome the convicting testimony which was basically circumstantial as follows:

> "Defendant's argument as to the inferiority of circumstantial evidence is not tenable. Circumstantial, the same as direct, evidence is sufficient if it satisfies the trier of the facts of defendant's guilt beyond a reasonable doubt. See Vuckson v. United States, 9 Cir., 354 F.2d 918, 920, cert. den. 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed. 2d 1007; United States v. Burkeen, 6 Cir., 350 F.2d 261, 264." United States v. Spencer, *supra* at 1303.

We are satisfied that the district court might reasonably have reached the result it did and that there was no abuse of discretion. We do not because of this result need to consider whether any weight in the exercise of trial court discretion should have been given to the fact that the testimony of Kahn would have been subject to possible impeachment as coming from a convicted felon. We also have assumed for the purposes of this appeal that there are no elements of collusion between Kahn and Curran. We further have not found it necessary to consider whether the motion is wanting in any other respects under the *Johnson* standards. Finally, we have not, because of the abbreviated nature of the record, considered the Government's contention that other witnesses acquainted with the transactions in question were available and could have been called. While we could have properly considered this argument by reviewing the entire record, we have not found

consideration of the point necessary in arriving at our determination.

For the reasons set out herein, the action of the district court in overruling and denying the motion for a new trial is affirmed.

Affirmed.